UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER EDDY, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>VANGUARD CAR RENTAL )<br>USA, INC., et al., )<br>)<br>    *Defendants* | Civil No. 09-313-P-S |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this insurance coverage action, the defendant Vanguard Car Rental USA, Inc. ("Vanguard" or "Alamo") moves for summary judgment as to the plaintiff's claims against it on grounds that a car rental agreement between itself and the plaintiff's mother naming the plaintiff as an additional driver affords no coverage for the plaintiff's injuries, sustained when he was struck by a third-party motorist while walking on a sidewalk in Portland, Maine, and that Maine law does not otherwise mandate that Alamo provide such coverage. *See* Defendant's Motion for Summary Judgment ("S/J Motion") (Docket No. 8) at 5-12.[1] For the reasons that follow, I recommend that the motion be granted.[2]

### I. Applicable Legal Standards

#### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

---

[1] Vanguard does business as "Alamo Car Rental." *See* S/J Motion at 2 n.1. For ease of reference, Vanguard and the plaintiff have referred to Vanguard as "Alamo," *see id.*; Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("S/J Opposition") (Docket No. 12) at 1, and I have done the same.
[2] After Alamo filed the instant motion, the plaintiff filed a motion to amend his complaint, which was granted. *See* Docket Nos. 13, 18, 20. The amendment of the complaint has no bearing on the instant motion.

R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and

supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008).

## II. Factual Background

Alamo's and the plaintiff's statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, with disputes in

cognizable facts resolved in favor of the plaintiff as nonmovant, reveal the following relevant facts.

On March 26, 2005, Denise Eddy, the plaintiff's mother, rented a car from Alamo at the Boston International Airport. Defendant's Statement of Undisputed Material Facts ("Defendant's SMF") (Docket No. 9) ¶ 1; Plaintiff's Reply [sic] Statement of Material Facts ("Plaintiff's Opposing SMF"), attached to S/J Opposition, ¶ 1.[3] Eddy entered into a written rental agreement with Alamo. *Id*. ¶ 2. The vehicle that Eddy rented was registered in the Commonwealth of Pennsylvania and garaged in Massachusetts. *Id*. ¶ 3; Exh. A to Declaration of Clark Dubin in Support of Defendant's Motion for Summary Judgment ("Dubin Decl.") (Docket No. 10).[4] The rental period was from March 26, 2005, through March 31, 2005. Defendant's SMF ¶ 4; Plaintiff's Opposing SMF ¶ 4. The plaintiff, Christopher Eddy, was named as an additional authorized driver on the rental agreement. *Id*. ¶ 5.

At the time that Eddy rented the car, the plaintiff's license to drive was suspended in Maine and had been since February 25, 2005. *Id*. ¶ 6. The rental agreement states:

> 5. "Authorized Driver(s)": I am the Authorized Driver if I have a valid driver's license, am at least 21 years of age (higher or lower in some locations, 18 for New York (rentals)) (a Young Renter fee will apply for drivers under age 25) (collectively, "Age Restrictions"), am named on the front of this Agreement and meet all of your rental requirements. Additional Authorized Drivers are authorized only if they pay additional driver charges, meet the Age Restrictions, have valid driver's licenses, are named on the front of this Agreement and meet all of your rental requirements. **ALL OTHER DRIVERS ARE UNAUTHORIZED[.]**

\*\*\*

---

[3] I shall refer to Denise Eddy as "Eddy" and to Christopher Eddy as "the plaintiff."
[4] The plaintiff purports to deny that the rental car was "garaged in Massachusetts," arguing that this assertion is unsupported by the citation given and that, during the rental period, the vehicle was in Maine. *See* Plaintiff's Opposing SMF ¶ 3. However, he fails to effectively controvert the statement. The document cited by Alamo, the rental agreement between Eddy and itself, states that the rental and return location for the five-day period in question was Boston International Airport. *See* Exh. A to Dubin Decl. It is a fair inference that the vehicle Eddy rented was garaged in Massachusetts prior to her rental and was to be garaged there afterward.

4

**SUBJECT TO STATE LAW, USE BY AN UNAUTHORIZED DRIVER VOIDS ALL LIABILITY INSURANCE PROTECTION, ENROLLMENT IN ANY OPTIONAL INSURANCE PRODUCTS, AND ANY OPTIONAL LOSS DAMAGE WAIVER ("LDW") PRODUCT PURCHASED UNDER THIS AGREEMENT.**

\*\*\*

6. Prohibited Uses and Violations: The following uses of the Vehicle are strictly prohibited by you. The Vehicle may not be used:

\*\*\*

**(G) IF THE DRIVER IS ANYONE OTHER THAN AN AUTHORIZED DRIVER;**

\*\*\*

**ANY LIABILITY PROTECTION PROVIDED BY YOU IS VOID AND OF NO FORCE OR EFFECT IF AT THE TIME OF THE ACCIDENT OR LOSS YOU OR ANY AUTHORIZED DRIVER WERE ENGAGED IN ANY OF THE "PROHIBITED USES AND VIOLATIONS" DESCRIBED ABOVE.**

*Id.* ¶ 7.[5]

On March 30, 2005, at 1:15 a.m., Abdirisiqua Yousaf's car struck the plaintiff. *Id.* ¶ 11. At the time that he was struck, the plaintiff was a pedestrian on Free Street in Portland, Maine, and was not operating the rental car. *Id.*

Alamo is a self-insured car rental agency and has filed a bond with the Maine Secretary of State pursuant to 29-A M.R.S.A. § 1611. *Id.* ¶ 12.

Eddy paid additional fees to have her son, the plaintiff, included in the rental contract as an additional authorized driver. Plaintiff's Statement of Additional Undisputed Material Facts

---

[5] The plaintiff purports to admit this statement in part and deny it in part. *See* Plaintiff's Opposing SMF ¶ 7. However, he does not effectively controvert it. He admits that the document appears to be accurately quoted. *See id.* His partial "denial" is in the nature of a qualification: that the so-called "fine print" of the rental agreement was never shown or explained to Eddy when she rented the vehicle from Alamo. *See id*; Affidavit of Denise Eddy in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Eddy Aff."), attached thereto, ¶ 11.

("Plaintiff's Additional SMF"), commencing on page [3] of Plaintiff's Opposing SMF, ¶ 13; Defendant's Reply to Plaintiff's Statement of Additional Undisputed Material Facts ("Defendant's Reply SMF") (Docket No. 22) ¶ 13. Eddy told the Alamo representative with whom she dealt that the vehicle would be going to Maine, and the representative told her that anywhere within New England was fine. *Id.* ¶ 14.

Eddy does not recall being given a copy of any documents from Alamo other than a copy of the rental agreement. Plaintiff's Additional SMF ¶ 15; Eddy Aff. ¶ 7. The Alamo representative instructed Eddy to initial the rental agreement in the four places that the representative circled, and she did so. Plaintiff's Additional SMF ¶ 17; Defendant's Reply SMF ¶ 17. Eddy signed the rental agreement where the Alamo representative had marked an "X." *Id.* ¶ 18. The Alamo representative did not show or explain to Eddy the "fine print" on the back of the rental agreement. Plaintiff's Additional SMF ¶ 19; Eddy Aff. ¶ 11.[6] Eddy finds the fine print on the rental agreement extremely difficult to read. Plaintiff's Additional SMF ¶ 20; Eddy Aff. ¶ 11.

### III. Discussion

Alamo seeks summary judgment on grounds that (i) the plaintiff had no coverage pursuant to the terms of the rental agreement given, *inter alia*, his status as an unauthorized driver, and (ii) Maine does not otherwise mandate the provision of coverage, specifically pursuant to either 29-A M.R.S.A. § 1611, which addresses the insurance obligations of rental car companies, or 24-A M.R.S.A. § 2902, which addresses the provision of uninsured motorist coverage. *See* S/J Motion at 4-12.[7]

---

[6] Alamo denies this. Defendant's Reply SMF ¶ 19; Exh. A to Dubin Decl. However, I view the evidence in the light most favorable to the plaintiff, as nonmovant.
[7] With respect to the first point, Alamo also alternatively argues that Eddy waived uninsured motorist coverage. *See* S/J Motion at 10-12. I need not and do not reach that argument.

The plaintiff counters that (i) the incident in question was covered under the rental agreement, (ii) in any event, section 2902 mandates coverage, and (iii) even if neither the rental agreement nor section 2902 mandates coverage, a genuine issue of material fact exists as to whether either Eddy or he had a sufficient understanding of the coverage available under the rental agreement.  *See* S/J Opposition at 3-10.

For the reasons that follow, Alamo demonstrates its entitlement to summary judgment.

### A.  Existence of Coverage Under the Rental Agreement

As a threshold matter, Alamo argues that the rental agreement plainly and unambiguously excludes coverage for persons, such as the plaintiff, who possess no valid driver's license at the time of the rental.  *See* S/J Motion at 5-7.

It notes that courts in other jurisdictions, which, like Maine, deem unambiguous insurance provisions enforceable, have upheld similar provisions vitiating coverage upon use of a rental car by an unauthorized driver.  *See id.* (citing *Travelers Ins. Co. v. Budget Rent-A-Car Sys., Inc*., 901 F.2d 765, 767 (9th Cir. 1990); *Banks v. International Rental & Leasing Corp*., Civil Nos. 2002-200, 2002-203, 2002-201, 2002-202, 2008 WL 2149380 (D.V.I. May 19, 2008); *Martell v. Palmer*, Civil Action No. 01-1071, 2007 WL 965961 (W.D. Pa. Mar. 29, 2007); *Empire Fire & Marine Ins. Co. v. Elrac, Inc*., No. 04 Civ. 10315(GEL), 2006 WL 3734308 (S.D.N.Y. Dec. 18, 2006); *Integon Nat'l Ins. Co. v. Welcome Corp. T/A Thrifty Car Rental*, 53 F. Supp.2d 599, 604 (S.D.N.Y. 1999); *Searfoss v. Avis Rent-a Car Sys., Inc*., 503 A.2d 950, 952-53 (Pa. Super. Ct. 1986)).

The plaintiff counters that, as a general rule in Maine, a policy of insurance must be interpreted against an insurer, with exclusions and exceptions disfavored.  *See* S/J Opposition at 8-9.  He adds that the caselaw cited by Alamo is materially distinguishable in that, in the cited

7

cases, the unauthorized driver was operating the rental vehicle at the time of the accident, whereas he was merely walking on a sidewalk, and in none of the cited cases was the unauthorized driver a named driver under the rental agreement, as was he. *See id.* at 4.

Alamo has the better argument. The plaintiff's reliance on the principle that insurance policies are to be construed against their drafters is misplaced. Such strict construction is appropriate only in cases in which the relevant policy language in ambiguous. *See, e.g., First Specialty Ins. Corp. v. Maine Coast Marine Constr., Inc.*, 532 F. Supp.2d 188, 195-96 (D. Me. 2008), *aff'd*, 558 F.3d 97 (1st Cir. 2009) ("In Maine, courts first examine relevant policy language to determine whether it is unambiguous; if so, it is enforced as written. Language of an insurance contract is ambiguous only if it is reasonably susceptible to more than one plausible interpretation when measured from the viewpoint of an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.") (citations and internal quotation marks omitted); *Acadia Ins. Co. v. Allied Marine Transport LLC*, 151 F. Supp.2d 107, 126 (D. Me. 2001) ("As is the case with other contracts, unambiguous provisions contained in insurance policies are to be interpreted as written, giving force to their plain meaning."); *see also, e.g., Searfoss*, 503 A.2d at 953 ("[A]ppellants claim that the terms of the rental agreement which operate to restrict insurance coverage must be strictly construed against the author and in favor of coverage. While such a principle is applied in situations of ambiguity, we are required to give effect to the language of the contract where, as here, such language and terms are clear and unambiguous.").

The rental agreement in this case clearly and unambiguously states that a person is considered an "authorized driver" not only if he or she is named on the front of the agreement but also if, *inter alia,* he or she has a valid driver's license. *See* Defendant's SMF ¶ 7; Plaintiff's

Opposing SMF ¶ 7. The agreement equally clearly and unambiguously states that, subject to state law, use of a vehicle by an unauthorized driver voids all liability insurance protection. *See id*. There is no dispute that the plaintiff used the rental car or that, at the time of the rental, his driver's license in Maine was suspended.

The plaintiff nonetheless seeks to distinguish his case from those cited by Alamo on the basis that, in the cited cases, the unauthorized driver was operating the rental vehicle at the time of the accident, whereas, in his case, he was merely walking on a sidewalk. *See* S/J Opposition at 4. He posits that "[i]n order for Alamo's argument to have merit, and for the cases cited by Alamo to apply, it would have to be an undisputed material fact that [the plaintiff's] conduct as a *pedestrian* at the moment he was struck by a hit-and-run driver of an uninsured motor vehicle was somehow conduct that violated the rental agreement." *Id*. (emphasis in original).

The plaintiff is mistaken. The cases cited by Alamo turn not on the nature of the mishap for which car renters' insurance coverage was sought but rather on whether, as here, coverage was vitiated by the use of a rental car by an unauthorized driver, in breach of unambiguous policy terms. *See Travelers*, 901 F.2d at 766 ("To allow Travelers to recover from Budget on the basis of the rental agreement would require an act of interpretive legerdemain; the language of the contract could not be clearer. The rental agreement provides liability coverage 'only for Renter and any Authorized Driver . . . for bodily injury . . . arising from use or operation of Vehicle as permitted by this Agreement.' . . . Brent Jones is neither the Renter nor an Authorized Driver as provided by the rental agreement."); *Banks*, 2008 WL 2149380, at *3 (finding no genuine dispute that driver was unauthorized to operate rental car, violating a use restriction in the rental car agreement); *Martell*, 2007 WL 965961, at *3 (holding that state's motor vehicle responsibility law did not require "a self-insured, such as Budget, to provide

liability coverage in a situation such as this where one who has rented a vehicle from a self-insured car rental agency violated the terms of the rental agreement"); *Empire*, 2006 WL 3734308, at *7 ("If an unauthorized driver used the car, the contract was violated, and even [the renter] would not be covered under the 'Exclusions' provision."); *Integon*, 53 F. Supp.2d at 604 ("The rental agreement specified that no one else was permitted to drive the vehicle without the lessor's permission.  Thus, this breach vitiated any coverage under the rental agreement."); *Searfoss*, 503 A.2d at 953 ("The [trial] court has properly found that the class of people entitled to insurance coverage, as unambiguously expressed in the agreement, included only persons who were permitted users under the agreement, and thus expressly excluded from the class are all drivers under 21 years of age.").

The plaintiff also seeks to distinguish Alamo's cases on the basis that none concerns a driver who was a named insured pursuant to the rental agreement.  *See* S/J Opposition at 4.  This, too, is a distinction without a difference.  The rental agreement between Eddy and Alamo plainly provides that coverage is void even as to a named insured if that individual lacks a valid driver's license.  *See* Defendant's SMF ¶ 7; Plaintiff's Opposing SMF ¶ 7.

In short, no conduct of the plaintiff is relevant, for purposes of application of the rental agreement's "unauthorized driver" provisions, other than conduct that occurred prior to the accident: namely, the plaintiff's use of the rental car while his Maine driver's license was under suspension.[8]  On the basis of that conduct, liability coverage was voided.

---

[8] As Alamo points out, the plaintiff, as an intended third-party beneficiary of the contract between Eddy and Alamo, is subject to Alamo's defenses against Eddy.  *See* Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("S/J Reply") (Docket No. 21) at 4; *see also, e.g., J.G.B. Enters., Inc. v. United States*, 497 F.3d 1259, 1261 (Fed. Cir. 2007) ("[A] third party beneficiary to a contract, when as here suing to enforce that contract against a promisor, is then subject to all of the defenses the promisor would have against the original promisee."); Restatement (Second) of Contracts § 309(2) ("If a contract ceases to be binding in whole or in part because of . . . non-occurrence of a condition, or present or prospective failure of performance, the right of any beneficiary is to that extent discharged or modified.").

### B. Existence of Coverage Under Maine Law

The plaintiff contends, and Alamo does not dispute, that in some circumstances Maine mandates insurance coverage despite the existence of clear policy provisions providing otherwise. *See* S/J Opposition at 7-8; S/J Reply at 5-6; *see also, e.g., Fitzpatrick v. Teleflex, Inc.*, 630 F. Supp.2d 91, 95 (D. Me. 2009) ("A contract is presumed to incorporate all relevant mandatory provisions of the statutes of the state in which it is made.") (citations and internal punctuation omitted). Nonetheless, Alamo argues that neither 29-A M.R.S.A. § 1611 nor 24-A M.R.S.A. § 2902 mandates coverage in the circumstances presented. *See* S/J Motion at 7-10. For the reasons that follow, Alamo is correct.

#### 1. 29-A M.R.S.A. § 1611

As Alamo points out, *see id.* at 7, 29-A M.R.S.A. § 1611 specifically addresses the insurance obligations of rental car companies, *see* 29-A M.R.S.A. § 1611. It is undisputed that Alamo is a self-insured car rental agency and has filed a bond with the Maine Secretary of State pursuant to section 1611. *See* Defendant's SMF ¶ 12; Plaintiff's Opposing SMF ¶ 12.

Section 1611 provides, in relevant part, that "[t]he required . . . bond must adequately provide liability insurance for the collection of damages for which the holder of a permit or the owner of a motor vehicle or vehicles may be liable by reason of the operation of a motor vehicle or vehicles subject to this chapter." 29-A M.R.S.A. § 1611(5).

Alamo observes that, in this case, the plaintiff was not operating the rental car at the time of the incident in question but, rather, walking on a sidewalk. *See* S/J Motion at 8. Accordingly, it argues, the requirements of section 1611(5) simply were not implicated: there was no potential

liability on its part or anyone else's "by reason of the operation" of the rental car in question. *See id*. Tellingly, the plaintiff offers no rejoinder. *See generally* S/J Opposition.

As Alamo argues in its reply brief, construction of section 1611 to mandate coverage in these circumstances would not only run afoul of the plain language of the statute but would also lead to absurd results. *See* S/J Reply at 5. Were section 1611 implicated here, it would be equally applicable in circumstances in which Drivers A and B rented a car, Driver A dropped off Driver B in Portland, Maine, and continued on to Canada, and two days later, Driver B was struck by an uninsured motorist while walking in the Old Port in Portland. *See id.* Alamo would be liable for Driver B's injuries even though the rental car was outside of the United States and had no connection to those injuries, and Driver B had not been in the rental car for two days. *See id*. As Alamo contends, "[t]here is nothing in the statutory scheme or expectation of the parties which indicates or justifies imposing broad insurance liability on a rental car agency for accidents which are wholly unrelated to the primary transaction – the rental of a car." *Id*.

### 2.  24-A M.R.S.A. § 2902

Alamo offers an equally simple and persuasive argument with respect to the applicability of Maine's uninsured motorist coverage statute, 24-A M.R.S.A. § 2902. That statute provides, in relevant part:

> A policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may not be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided in the policy or supplemental to the policy for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

24-A M.R.S.A. § 2902(1).

As Alamo points out, the rental agreement in question was neither "delivered or issued for delivery" in Maine nor concerned a vehicle "registered or principally garaged" here. *See* S/J Motion at 9-10. The vehicle that Eddy rented was registered in Pennsylvania and garaged in Massachusetts. *See* Defendant's SMF ¶ 3; Exh. A to Dubin Decl. Even taking into account that, as the plaintiff points out, the vehicle was present in Maine for Eddy's five-day rental period, *see* Plaintiff's Opposing SMF ¶ 3, that is not, as a matter of law, a sufficient length of stay to permit a finding that it was "principally garaged" here. *See, e.g., Chalef v. Ryerson*, 648 A.2d 1139, 1141 (N.J. Super. Ct. App. Div. 1994) ("We construe the term 'principally garaged' to mean the physical location where an automobile is primarily or chiefly kept or where it is kept most of the time."). Section 2902 hence is inapposite on the facts of this case.

The plaintiff's response, which focuses on the general proposition that section 2902 is construed broadly to afford coverage for personal injuries caused by uninsured, underinsured, and hit-and-run motorists, *see* S/J Opposition at 5-7, fails to address Alamo's argument. There is no basis offered by the plaintiff on which to stave off summary judgment.

### C. Eddy's and Plaintiff's Lack of Understanding

The plaintiff finally argues that, even if the provisions in the rental agreement do not directly contradict Maine's statutory requirements, a genuine issue of material fact exists as to whether he or Eddy had a sufficient understanding of the provision, or lack thereof, of uninsured motorist coverage under Alamo's policy. *See* S/J Opposition at 10.

Eddy acknowledges receiving a copy of the rental agreement. *See* Plaintiff's Additional SMF ¶ 15. Even crediting her statements that the Alamo representative did not show her, or explain to her, the fine print on the back of the rental agreement, and that she signed in the places where he indicated that she should, her failure to review the terms of the policy does not render it

unenforceable. *See, e.g., Francis v. Stinson*, 2000 ME 173, ¶ 42, 760 A.2d 209, 217 ("As a matter of general contract law, parties to a contract are deemed to have read the contract and are bound by its terms."); *Searfoss*, 503 A.2d at 952 ("In the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.").[9]

There is no reason to reach a different outcome with respect to the understanding or lack thereof of the plaintiff, a third-party beneficiary.

### IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** Alamo's motion for summary judgment.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

---

[9] The plaintiff does not argue that that the rental agreement was a "contract of adhesion" that was substantively or procedurally unconscionable. *See* S/J Opposition at 10; *see also Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶¶ 32-33, 36, 870 A.2d 146, 155-56 ("A contract of adhesion is a standardized contract that is imposed and drafted by a party with a superior bargaining position, and that gives the other party only the choice to accept or reject the contract. A contract of adhesion is not *per se* unconscionable, but the defense of unconscionability may be asserted to a contract of adhesion exacted by the overreaching of a party. In deciding claims of unconscionability, courts consider a variety of factors that may be indicative of procedural or substantive unconscionability. . . . Substantive unconscionability or unfairness focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience.") (citations and internal quotation marks omitted). Issues mentioned in a perfunctory manner, unaccompanied by an attempt at developed argumentation, are deemed waived. *See, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990). Even assuming, *dubitante,* that the argument is sufficiently presented to be cognizable, the plaintiff offers no showing or explanation why the rental agreement is unenforceable on those grounds. He does not demonstrate that Eddy's signature was exacted by overreaching or indicate how the terms of the rental agreement are substantively unconscionable.

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 21st day of January, 2010.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
